UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| EMILY S.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 4:22cv22 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act and for Supplemental Security Income under Title XVI of the Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2017.

2

2. The claimant has not engaged in substantial gainful activity since July 1, 2015, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: chronic pain disorder; degenerative disc disease of the lumbar spine; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally climb ramps and stairs; and occasionally stoop, kneel, crouch, and crawl. The claimant can never climb ladders, ropes or scaffolds. The claimant can never work at unprotected heights and never balance, as the terms is [sic] defined in the SCO.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 12, 1988 and was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-27).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits,

leading to the present appeal.

Plaintiff filed her opening brief on September 6, 2022. On November 18, 2022 the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on December 19, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

In support of remand, Plaintiff first argues that the ALJ erred in evaluating the medical opinions. Plaintiff claims that the ALJ relied on unsupported medical opinions consistent with the ALJ's RFC and rejected opinions suggesting that greater restrictions were warranted. Specifically, the ALJ found Dr. Bangura's opinion regarding Plaintiff's sitting, standing, walking, and lifting

abilities "not persuasive" because the opinion was "not consistent with or supported by the record," including "essentially normal" clinical findings during the consultative exam and subsequent "improvements" in pain with "just conservative care." (Tr. 26.) Plaintiff contends that the ALJ was not qualified to determine that Dr. Bangura's findings were "essentially normal". Plaintiff points out that Dr. Bangura's exam findings were not "essentially normal" as Dr. Bangura observed irregular heart rate and rhythm, difficulty walking on heels, pain in the lumbosacral area, and a BMI of 54.1. (Tr. 1302-06.) Plaintiff notes that Dr. Bangura's opinion is also consistent with imaging showing significant abnormalities in Plaintiff's lumbar spine and exams revealing pain in the low back, SI joint, and gluteus muscles, decreased range of motion in the spine, nerve tension signs, positive straight-leg raising tests, and abnormal gait. The record supports Plaintiff's assertion that the ALJ's conclusion that Plaintiff's symptoms "improved" with "just conservative care" is not grounded in the evidence, leaving the ALJ's rejection of Dr. Bangura's opinion unsupported.

Clearly, the ALJ needed to more carefully consider Dr. Bangura's opinion pursuant to the regulatory requirements. *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) (given their employment relationship, it is unlikely that Agency examiners would "exaggerate an applicant's disability"); *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020) (citing 20 C.F.R. § 404.1520c(c)(3)) (explaining that, in evaluating evidence, ALJ must consider than an examining doctor may have more insights than a doctor reviewing evidence in a folder); 20 C.F.R. § 404.1520c(c)(3). Thus, remand is required on this issue.

Plaintiff further argues that the ALJ improperly rejected Dr. Rayl's opinion that Plaintiff's symptoms of anxiety and depression affect her social and occupational functioning. (Tr. 19.) As

5

Plaintiff notes, medical sources are not required to offer opinions in specific functional terms. *Burnam v. Colvin*, 525 F. App'x 461 (7th Cir. 2013)) (lack of function-by-function analysis not a basis to reject a medical source's opinion). The record shows that Dr. Rayl's opinion is supported by her exam showing constricted affect and Plaintiff's reports of chronic pain, anxiety, depression, panic attacks, excessive worry, low energy and motivation, lack of hobbies, and only a "fair" relationship with her family. (Tr. 1308-11.) Also, Dr. Rayl's opinion is consistent with Dr. Bangura's opinion that Plaintiff struggles with understanding directions, concentration, persistence, memory, working with others, and social interactions (Tr. 1302-06); exams showing "fair" judgment and insight (Tr. 1541-52); Plaintiff's reports to providers of anxiety, depression, irritability, difficulty sleeping, chronic pain, low motivation, mood swings, difficulty concentrating, "fogginess," headaches, and daytime fatigue (Tr. 755-57, 809-11, 841-42, 847-48, 876-78, 1256-72, 1277-78, 1538-66); a PHQ-9 score indicating moderately severe depression (Tr. 761-64); diagnoses of major depressive disorder, generalized anxiety disorder, and insomnia (Tr. 841-42, 847-48, 876, 1541-42); and prescriptions for SSRIs, antidepressants, anxiolytics, and antipsychotics, which were regularly adjusted in an attempt to manage Plaintiff's symptoms (*see, e.g.*, Tr. 746-48, 756-57, 761-64, 847-48, 1277-78, 1541-42).

This Court agrees with Plaintiff that Dr. Rayl's opinion suggests that at least some restrictions are necessary to address Plaintiff's limitations in social and occupational functioning due to her anxiety and depression. As the only examining medical source to issue an opinion regarding Plaintiff's limitations due to her mental impairments, the ALJ was required to explain why Dr. Rayl's opinion did not merit RFC restrictions. *See, e.g., O'Connor-Spinner*, 627 F.3d at 621 (ALJ must explain why certain evidence is outweighed by other evidence).

The ALJ's reliance on the State Agency consultants' opinions is misplaced given that the opinions are unsupported. For example, the ALJ found the State Agency psychological consultants' determinations that Plaintiff's mental impairments are non-severe "persuasive" as consistent with the absence of "specific complaints" of psychiatric symptoms despite taking psychotropics, reports of symptoms improvement, and "normal" exam findings. (Tr. 18-19.) The ALJ's conclusion that Plaintiff did not specifically allege psychiatric symptoms is incorrect, and the ALJ's reliance on select notes of "improvement" amidst evidence of fluctuating symptoms prompting regular medication adjustments is unsupported.

Moreover, the psychological consultants did not consider exams showing "fair" judgment and insight (Tr. 1541-42); reports of crying all the time, high anxiety, irritability, difficulty sleeping, fluctuating depression, mood swings, difficulty concentrating, headaches, becoming easily overwhelmed, and napping during the day (Tr. 755-57, 809-11, 841-42, 847-48, 876-78, 1256-72, 1277-78, 1538-66); frequent medication adjustments, which did not resolve Plaintiff's symptoms and caused side effects (*see, e.g.*, Tr. 746-48, 756-57, 761-64, 847-48, 1277-78); and the impact of Plaintiff's chronic pain on her mental functioning. Therefore, the opinions of the state agency consultants are unsupported and the ALJ was not entitled to rely on them. *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) (ALJs may not rely on outdated opinions of agency consultants "if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.").

Additionally, the State Agency medical consultants did not address imaging showing progression of disc disease at the L2 to L5 levels with bulge stenosis or impingement, bilateral lumbosacral pars defect, mild left scoliosis, scattered endplate osteophytes, and disc space

7

narrowing in the lumbar spine (Tr. 703, 1160-61, 1213-14, 1634); an EMG revealing an L4 nerve root lesion (Tr. 1625); exams showing pain, facet loading, decreased range of motion, and nerve tension signs in the lumbar spine, positive straight-leg raising tests, pain in the SI joint and gluteus muscles, and abnormal gait (Tr. 287-315, 318-32, 353, 1149-53, 1165-57, 1198-1201, 1203-06, 1222-25, 1251-55, 1378-80, 1668-71, 1775-78); failed narcotics, injections, medial branch blocks, radiofrequency ablation, and PT (Tr. 310-12, 327-29, 330-33, 335, 339, 341-52, 357, 481-82, 708-41, 757-60, 814-16, 825-26, 848, 1138, 1363, 1420-21, 1426-27, 1673, 1766-67); ER visits and one hospitalization for back, shoulder, and abdominal pain (Tr. 474-77, 508-51, 621-26, 1634-41); and Dr. Bangura's opinion that Plaintiff can sit 3 hours, can stand and walk 1 hour, and cannot lift or carry more than 10 pounds (Tr. 1302-06). The combination of the above evidence constitutes "significant" and "potentially decisive findings" that "reasonably could have changed the [medical opinions]" that Plaintiff's conditions do not meet or medically equal a Listing and that she can perform light work. *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018).

As the ALJ erred in evaluating the medical opinions, as set forth above, remand is required.

Next, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence. The ALJ concluded that Plaintiff has the RFC to perform light work, except she occasionally can climb ramps and stairs, stoop, kneel, crouch, and crawl; can never climb ladders, ropes, or scaffolds; and can never work at unprotected heights or balance. (Tr. 21.) "Light" work requires the ability to walk or stand approximately 6 hours in an 8-hour workday and lift and carry up to 20 pounds. 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251, at *6 (Jan. 1,

1983). Plaintiff argues that the evidence shows that Plaintiff is not capable of meeting those demands.

The record shows that Plaintiff suffers from lumbar disc degeneration, disc bulging and displacement, spondylosis, and radiculopathy, sacroiliitis, right hip pain, myositis, and chronic pain syndrome. (Tr. 330-32, 829-30, 1222-25, 1251-55, 1363-69.) Objective testing showed progression of disc disease at the L2 to L5 levels with bulge stenosis or impingement, bilateral lumbosacral pars defect, mild left scoliosis, scattered endplate osteophytes, and disc space narrowing in the lumbar spine (Tr. 703, 1160-61, 1213-14, 1634) and an L4 nerve root lesion (Tr. 1625). Exams revealed pain, facet loading, decreased range of motion, and nerve tension signs in the lumbar spine, positive straight-leg raising tests, pain in the SI joint and gluteus muscles, difficulty walking on the heels, and abnormal gait. (Tr. 287-315, 318-32, 353, 1149-53, 1165-57, 1198-1201, 1203-06, 1222-25, 1251-55, 1378-80, 1668-71, 1775-78.) Treatment, including prescription narcotics, PT, numerous injections, two nerve blocks, and two radiofrequency ablation procedures, have failed to resolve Plaintiff's pain. (Tr. 310-12, 327-29, 330-33, 335, 339, 341-53, 357, 481-82, 708-41, 757-60, 814-16, 825-26, 848, 1138, 1302-06, 1363, 1420-21, 1426-27, 1673, 1766-67.)

As noted earlier, Dr. Bangura concluded that Plaintiff can sit 3 hours, stand 1 hour, walk 1 hour, and cannot lift or carry more than 10 pounds. (Tr. 1302-06.) Also, Plaintiff reported back pain aggravated by walking, standing, lifting, and activities. (Tr. 287-303, 307-17, 321-32, 468-69, 485-87, 497-99, 563, 746-48, 755-56, 765-66, 1165-67, 1179-81, 1198-1201, 1222-25, 1247-49, 1251-55, 1668-71, 1783-85.) Plaintiff stated that she must take many breaks when caring for her children and doing housework, has assistance from others with those tasks,

9

struggles to dress, prepares "extremely easy" meals, cannot vacuum or "pick up" her house, only drives when she must, has difficulty lifting, squatting, bending, kneeling, reaching, and climbing stairs, and cannot walk more than 10 minutes or sit more than 1 hour. (Tr. 226-34; *see also* Tr. 236-43 (Plaintiff's mother's Third Party Function Report noting similar limitations).)

Additionally, Plaintiff is extremely obese, with a BMI of 46.35 in May 2021 (Tr. 1777), but as high as 55 at the time of her gastric bypass revision surgery in January 2021 (Tr. 1344). Her extreme obesity is undoubtedly interrelated with her lumbar disc disease, SI joint and hip pain, chronic pain syndrome, and mental impairments. SSR 19-2p, 2019 WL 2374244, at *3 (May 20, 2019) (the Agency explains that obesity is often associated with musculoskeletal and respiratory impairments, osteoarthritis, diabetes, and mental impairments); (*see also* Tr. 747, 1314 (Plaintiff's weight caused her significant back pain), Tr. 1295 (Plaintiff felt great shame gaining weight back after her first gastric bypass surgery and feels compulsive eating is "direct[ly] tie[d]" to her depression)).

The ALJ downplayed Plaintiff's extreme obesity, even though exams showed BMIs nearing or exceeding 50, because there was no mention of "specific" limitations due to Plaintiff's weight. (Tr. 21.) However, because of the overlapping symptomology between Plaintiff's various conditions, it is a mischaracterization to suggest that Plaintiff's weight caused her no limitations simply because she did not always specifically report that her limitations are exacerbated by her weight. The ALJ's conclusion is also undermined by the fact that Plaintiff's providers performed two gastric bypass surgeries and often recommended that she lose weight to help her back pain (*see, e.g.*, Tr. 870, 903, 1344) and the ALJ's acknowledgement that Plaintiff's weight caused postural limitations and diminished mobility (Tr. 26). After determining at Step Three that

10

Plaintiff's obesity did not medically equal a listing (Tr. 21), the ALJ mentioned it only in passing in the RFC and failed to explain how the RFC accommodates Plaintiff's extreme obesity (Tr. 24-25).

Plaintiff further argues that the RFC is devoid of restrictions to accommodate Plaintiff's mental limitations due to her anxiety, depression, chronic pain, and fatigue, despite the ALJ questioning the VE regarding the availability of jobs for someone with mental restrictions. (Tr. 48-49). The ALJ rejected Plaintiff's mental impairments at Step Two as non-severe and assessed only mild limitations in the "B Criteria." (Tr. 17-20.) However, even if the evidence supported the conclusion that Plaintiff's anxiety and depression are non-severe and cause only mild limitations, the ALJ still needed to explain how these conditions and Plaintiff's other psychiatric symptoms factored into the RFC. *See* 20 C.F.R. § 404.1545(a)(1) (we will assess your residual functional capacity based on all the relevant evidence in your case record); *id* § 404.1545(a)(2) (we will factor your non-severe impairments into the RFC); SSR 96-8p, 1996 WL 374184, at *5 (RFC must be based on all of the relevant evidence).

Here, the ALJ rejected Plaintiff's mental impairments, relying on unsupported State Agency opinions. (*See* Tr. 43, 45-46, 231-32, 755-57, 809-11, 841-42, 847-48, 876-78, 1256-72, 1277-78, 1538-66 (can pay attention just 10 to 20 minutes; sometimes makes herself sick when stressed; naps during the day; becomes easily overwhelmed; her medications cause "extra fatigue" during the day; she is anxious "all the time," especially around other people).The ALJ's conclusions were inaccurate and unsupported, and he failed to consider the impact of Plaintiff's chronic pain and extreme obesity on her mental functioning. SSR 03-2p, 2003 WL 22399117, at *5 (Oct. 20, 2003); 20 C.F.R. § 404.1529 (c)(3)(iv) (factors that must be considered include the

11

nature and intensity of claimant's pain, precipitation and aggravating factors, and dosage and effectiveness of any pain medication).

Thus, for the above reasons, remand is required for a proper assessment of Plaintiff's RFC.

<u>Conclusion</u>

On the basis of the foregoing, the Commissioner's decision is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: January 4, 2023.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court